Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000870
07-AUG-2019
07:47 AM

NO. CAAP-14-0000870

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ROBERT GRINPAS and ESTHER GRINPAS, Plaintiffs-Appellees/Cross-Appellees, v. KAPAA 382, LLC, A Hawaii Limited Liability Company, Defendant/Cross-Appellee; KULANA PARTNERS, LLC, A Hawaii Limited Liability Company, Defendant/Third-Party Plaintiff-Appellee/Cross-Appellant; WILLIAM R. HANCOCK, Defendant-Appellant/Cross-Appellee; DOES 1-10,

AND

KULANA PARTNERS, LLC, Defendant/Third-Party Plaintiff/Cross-Appellant v. WILLIAM R. HANCOCK, Trustee of HANCOCK AND CO., INC. PROFIT SHARING TRUST under trust instrument April 3, 1993, Third-Party Defendant/Appellant/Cross-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CC07-1-000132)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Hiraoka, JJ.)

Defendant-Appellant/Cross-Appellee William R. Hancock (**Hancock**) and Third-Party Defendant/Appellant/Cross-Appellee William R. Hancock, Trustee of Hancock and Company, Inc. Profit Sharing Trust (**Trustee**) appeal from the **Second Amended Final Judgment**[1] entered by the Circuit Court of the Fifth Circuit

---

[1] The full title of the document is: "Second Amended Final Judgment as to (1) Counts I, II and III in Plaintiffs' Complaint for Declaratory Judgment, Equitable Relief and Damages, Filed September 5, 2007 Against Kulana Partners, LLC; (2) All Counts in Kulana Partners, LLC's First Amended Counterclaim Against Plaintiffs Robert Grinpas and Esther Grinpas and Kulana Partners, LLC's First Amended Cross-Claim Against Defendants William R. Hancock and Kapaa 382, LLC, Filed on October 25, 2007; and (3) All Counts in Kulana Partners, LLC's Third Party Complaint, Filed on October 5, 2007."

(**Circuit Court**)[2] on March 15, 2019. Hancock[3] contends that the Circuit Court erred when it denied his motion for summary judgment against Defendant/Third-Party Plaintiff-Appellee/Cross-Appellant Kulana Partners, LLC (**KPL**).

KPL cross-appeals. It contends that the Circuit Court erred when it (1) denied KPL's motion for summary judgment on election of remedies, (2) found that Plaintiffs-Appellees/Cross-Appellees Robert and Esther Grinpas (the **Grinpases**) did not tortiously interfere or conspire to tortiously interfere with KPL's property rights, (3) found that Hancock, Trustee, and Defendant/Cross-Appellee Kapaa 382, LLC (**K382**) did not tortiously interfere or conspire to tortiously interfere with KPL's property rights, or make negligent or fraudulent misrepresentations to KPL, and (4) denied KPL's request for attorneys' fees.

For the reasons explained below, we affirm the Second Amended Final Judgment.

## I.

This case is before us for the second time; we summarized the factual background in Grinpas v. Kapaa 382, LLC, No. 30139, 2012 WL 503818 (Haw. App. Feb. 15, 2012) (mem.) (**Grinpas I**). Terms defined in Grinpas I are shown below in bold type.

### A.    Pre-Lawsuit Transactions

The Grinpases own real property in Kapaʻa, Kauaʻi known as **Lot 77J**. In 1998 the Grinpases agreed with Hancock and K382 to purchase nearby property – a lot (**Unit 2X**) in what was to become the Kulana Condominium – and to be granted a permanent easement through property known as **Remnant 3** (also owned by Hancock and K382) for access between Unit 2X and Lot 77J. Grinpas I, at *1.

The Grinpases could not purchase Unit 2X until Hancock and K382 completed a subdivision and condominium property regime,

---

[2]    The Honorable Randal G.B. Valenciano presided.

[3]    Trustee failed to file an opening brief.

so they entered into a fifteen year **License Agreement** with K382 to use the property. A map attached to the License Agreement shows an access way over Remnant 3 connecting Lot 77J with Unit 2X. The License Agreement was recorded in the Bureau of Conveyances on January 27, 2000. Grinpas I, at *1. There is nothing in the record evidencing that an easement document was created or executed. Grinpas I, at *2.

At some later time, Trustee acquired ownership of Remnant 3. In July 2002 Trustee sold Remnant 3 to KPL. The **DROA** contained provision **C-67(A)(2)** that stated: "[t]ransaction contingent upon [KPL]'s review and approval by 7/29/02 of: . . . Grimpas [sic] Access Easement[.]" Grinpas I, at *2. KPL received a preliminary title report that did not include any reference to an access easement. Grinpas I, at *2. Trustee conveyed Remnant 3 to KPL by way of a deed (**Trustee's Deed**) that was recorded in the Bureau of Conveyances on August 28, 2002. The Trustee's Deed did not contain any provision for an easement burdening Remnant 3. Grinpas I, at *2.

In September 2003 the Grinpases, Hancock, and K382 settled disputes over verbal agreements concerning the use and purchase of portions of the Kulana property by entering into the **Settlement Agreement.** The Settlement Agreement required, among other things, that Hancock and K382 provide the Grinpases with an easement through Remnant 3. KPL owned Remnant 3 when the Settlement Agreement was executed, but KPL was not a party to the Settlement Agreement. Grinpas I, at *3. One way Hancock and K382 could have performed under the Settlement Agreement would have been for them to purchase an easement from KPL for the benefit of the Grinpases' Lot 77J.

On December 14, 2004, the **CPR Declaration** for the Kulana Condominium was recorded in the Bureau of Conveyances. A map filed with the CPR Declaration showed Remnant 3 as part of the condominium property regime, with an easement (**Remnant 3 Easement**) in favor of the Grinpases' Lot 77J burdening Remnant 3. KPL did not sign the CPR Declaration, but on December 21, 2004, KPL's **Consent and Joinder** to the CPR Declaration was filed in the Bureau of Conveyances. Grinpas I, at *3.

On January 27, 2005, the **First Amended Declaration** was recorded in the Bureau of Conveyances.  KPL neither approved nor consented to the First Amended Declaration.  On July 20, 2005, the **Second Amended Declaration,** executed by KPL as "Remnant 3 Owner," was recorded in the Bureau of Conveyances.  The Second Amended Declaration removed Remnant 3 from the Kulana Condominium.  Grinpas I, at *3.

On July 16, 2007, the **Apartment Deed** transferring ownership of Unit 2X to the Grinpases was recorded in the Bureau of Conveyances.  Unit 2X would have been connected to Lot 77J if the Remnant 3 Easement (shown in the CPR Declaration) existed, but KPL disputed the existence of the easement.  Grinpas I, at *4.

## B.    Grinpases File Suit

On September 5, 2007, the Grinpases filed the action below against K382, Hancock, and KPL.  They sought (1) a declaration that the Remnant 3 Easement existed, (2) a mandatory injunction for an easement through Remnant 3, and (3) an award of damages.

On October 15, 2007, KPL answered the complaint, counterclaimed against the Grinpases, and cross-claimed against Hancock and K382.  On October 25, 2007, KPL filed an amended counterclaim and cross-claim, and a third-party complaint against Trustee.

Hancock answered the complaint and the amended cross-claim on December 20, 2007.  He did not assert a cross-claim against KPL for fraud.  He did not plead fraud as an affirmative defense.

KPL filed a motion for partial summary judgment on March 30, 2009, seeking a determination that there was no easement burdening Remnant 3.  On April 21, 2009, the Grinpases filed their own motion for partial summary judgment seeking a determination that Remnant 3 was burdened by an easement.  The Circuit Court heard the cross-motions on May 14, 2009, and took them under advisement.  On August 3, 2009, the Circuit Court entered an order granting KPL's motion and denying the

4

Grinpases's motion, and a judgment in favor of KPL and against the Grinpases, Hancock, and K382 (the **Declaratory Judgment**), declaring "that there is no access and utilities easement in favor of [the Grinpases, Lot 77J,] and/or Unit 2X over, across, through or encumbering [Remnant 3]." The Declaratory Judgment specified that it "does not affect the License Agreement[.]" The Circuit Court certified the Declaratory Judgment as final pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(b) (eff. 2000). The Grinpases appealed.

While the Grinpases's appeal from the Declaratory Judgment was pending before us, the Circuit Court conducted a bench trial of the Grinpases's remaining claims against Hancock and K382. The Grinpases's written opening statement acknowledged:

> the [Circuit] Court has found that there is not a valid
> easement through the Remnant 3, Kulana property (North
> Easement), in favor of [the Grinpases].

Similarly, the Grinpases's proposed findings of fact and conclusions of law stated:

> 16. KPL has maintained, and the Court has found that there
> is not a valid easement through the Kulana Remnant 3
> property, in favor of [the Grinpases].
>
> 17. [K]382 and Hancock are in breach of their agreements
> with [the Grinpases] in that they have failed to convey a
> valid easement in favor of [the Grinpases], through Kulana
> Remnant 3, connecting [the Grinpases's] farm properties, to
> wit Kulana Unit 2X and Grinpas Farms, Unit 3.
>
> . . . .
>
> 26. Hancock and [K]382 have breached their agreement with
> [the Grinpases] in that Hancock and [K]382 have failed to
> perform their agreement to provide [the Grinpases] with a
> permanent easement through the Kulana Remnant 3 property.

And the Grinpases's written closing argument argued:

> the court has found that there is not a valid easement
> through the remnant 3, Kulana property (north easement), in
> favor of [the Grinpases]. Therefore, it is established as
> the law of the case that Hancock, Hancock Trustee, and
> [K]382 are in breach of their contractual obligations to
> provide [the Grinpases] with the easement through remnant 3.

On October 23, 2009, the Circuit Court entered its "Order Granting Final Judgment as to All Claims Set Forth in

Plaintiffs['] Complaint Against Defendant William R. Hancock, and Defendant Kapaa 382, LLC, a Hawaii [sic] Limited Liability Company" (**October 2009 Order**). On October 23, 2009, a final judgment was entered pursuant to HRCP Rule 54(b) in favor of the Grinpases and against Hancock and K382 in the amount of $146,239.01 (**Breach of Contract Judgment**). The deadline to appeal the Breach of Contract Judgment was November 23, 2009.[4] No notice of appeal was filed.

It does not appear that the parties informed us of the Breach of Contract Judgment while the Grinpases's appeal from the Declaratory Judgment was pending, because our February 15, 2012 memorandum opinion in Grinpas I contains no mention of it. In Grinpas I we vacated the Declaratory Judgment and remanded the case to the Circuit Court because:

> there are genuine issues of material fact as to whether KPL intended to create easements via the Consent and Joinder. Moreover, *if easements were created* by the Consent and Joinder, there are genuine issues of material fact as to the intent and meaning of the Second Amended Declaration, and further, no evidence that the Grinpases agreed to termination of any easements.

Grinpas I, at *7.

### C.    Proceedings on Remand

On January 28, 2013, KPL filed a motion for summary judgment on the Grinpases' complaint. KPL's motion was denied by order entered on April 22, 2013. That order is one of the subjects of KPL's cross-appeal.

On February 15, 2013, Hancock filed a motion for summary judgment against KPL on KPL's cross-claim. Hancock's motion was denied by order entered on March 22, 2013. That order is the subject of Hancock's appeal.

The Circuit Court conducted a bench trial from April 29, 2013, until May 3, 2013, and on May 20, 2013. On June 28, 2013, KPL filed a declaration of counsel in support of its claim for attorneys' fees. KPL's request for attorneys' fees

---

[4]    The thirtieth day after October 23, 2009, was Sunday, November 22, 2009. Hawaii Revised Statutes (**HRS**) § 1-29 (1993).

6

was denied by order entered on August 15, 2013. On October 22, 2013, the Circuit Court entered its Findings of Fact and Conclusions of Law (**Findings & Conclusions**). The Findings & Conclusions were expressly based upon the Circuit Court's consideration of the credibility of the witnesses. The Circuit Court found that "KPL did not intend through the Consent and Joinder to create or grant easements over Remnant 3[.]"

A judgment was entered on October 22, 2013.[5] An amended judgment was entered on May 23, 2014. Hancock and Trustee filed a timely notice of appeal on June 3, 2014. KPL filed a timely cross-appeal on June 4, 2014. By order entered on February 28, 2019, we temporarily remanded this matter to the Circuit Court pursuant to State v. Joshua, 141 Hawaiʻi 91, 93, 405 P.3d 527, 529 (2017), because Count III of the Grinpases' complaint for damages against KPL was not resolved by either the Breach of Contract Judgment or the May 23, 2014 amended judgment. The Second Amended Final Judgment was entered on March 15, 2019.

## II.

The Breach of Contract Judgment was entered pursuant to HRCP Rule 54(b)[6] and was never appealed. Thus it terminated the action as to the claims and parties it addressed, cf. Commerce & Indus. Ins. Co. v. Bank of Haw., 73 Haw. 322, 328-29, 832 P.2d

---

[5]    Hancock and KPL filed notices of appeal from the October 22, 2013 judgment but the appeals (Nos. CAAP-13-0005314 and CAAP-13-0005554) were dismissed for lack of appellate jurisdiction.

[6]    HRCP Rule 54 provides, in relevant part:

> (b) Judgment upon multiple claims or involving multiple parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

733, 736-37 (1992) (implying that Rule 54(b)-certified judgment terminating sole potentially covered claim would have terminated liability insurer's duty to defend against remaining non-covered claims), and the following findings of fact contained in the October 2009 Order are final and binding on the Grinpases and Hancock and their respective privies:[7] (1) Hancock agreed to provide the Grinpases with an easement through Remnant 3; (2) Hancock failed to convey an easement through Remnant 3 to the Grinpases; (3) the Grinpases' only alternative to connect Lot 77 and Unit 2X was to purchase an easement through another property and to construct a new road; and (4) the Grinpases sustained damages of $114,500 because of Hancock's failure to convey an easement through Remnant 3.[8]

In addition, the doctrine of "law of the case" applies to the legal issues decided in Grinpas I. Ditto v. McCurdy, 98 Hawai'i 123, 128, 44 P.3d 274, 279 (2002). Thus, DROA provision C-67(A)(2) did not create an express easement over Remnant 3 in favor of the Grinpases. Grinpas I, at *6. The Trustee's Deed "accurately reflects that there was no express easement over Remnant 3 at that time." Grinpas I, at *6. The only possibility for the Grinpases to be entitled to an easement over Remnant 3 would be if "KPL intended to create easements via the Consent and Joinder." Grinpas I, at *7. It is within this framework that we examine the current appeal and cross-appeal.

## A.    Hancock's Appeal

Hancock's opening brief fails to comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) (eff. 2010). It appears he is appealing from the denial of his February 15, 2013 motion for summary judgment against KPL (**Hancock's MSJ**). An

---

[7]    "Collateral estoppel, also referred to as issue preclusion, may preclude the relitigation of a fact or issue that was previously determined in a prior action on a different claim or cause of action between the same parties or their privies and applies if the particular issue in question was actually litigated, finally decided, and essential to the earlier valid and final judgment." Uyeda v. Schermer, 144 Hawai'i 163, 173, 439 P.3d 115, 125 (2019) (citations and internal quotation marks omitted).

[8]    The balance of the $146,239.01 judgment represented an award of damages based upon the Grinpases also not having an easement over property other than Remnant 3, and an award of costs.

appellate court reviews a trial court's ruling on a motion for summary judgment de novo using the same standard applied by the trial court.  Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

Id. at 342, 418 P.3d at 1198 (citations, quotation marks and brackets omitted).

Hancock's MSJ argued that: (1) the Trustee's Deed was fraudulently altered to remove reference to the Remnant 3 Easement after Trustee signed it but before it was recorded; and (2) an attorney who allegedly represented KPL was aware of the purported Remnant 3 Easement, which knowledge should have been imputed to KPL.  These arguments fail for a number of reasons.

Hancock's answer to KPL's cross-claim did not assert fraud as an affirmative defense.  Hancock never asserted a fraud claim against KPL.  Trustee never responded to KPL's third-party complaint, and Trustee's default was entered on March 12, 2009.[9] Trustee never asserted a fraud claim against KPL.  Hancock's and Trustee's failure to plead fraud – either as a claim or an affirmative defense – bars them from contending that KPL fraudulently altered the Trustee's Deed.  See HRCP Rule 8(c) (eff. 2000); State ex rel. Office of Consumer Protection v. Honolulu Univ. of Arts, Sci. & Humanities, 110 Hawaiʻi 504, 516, 135 P.3d 113, 125 (2006).

In addition, Hancock's contention of fraud and his argument about KPL's attorney's knowledge being imputed to KPL are both predicated upon the existence of an easement actually burdening Remnant 3.  That is inconsistent with the findings of fact set forth in the October 2009 Order which, because the

---

[9]    KPL waived the default because Trustee appeared and participated (through counsel) in the 2013 bench trial of KPL's counterclaim, cross-claim, and third-party complaint without objection from KPL.

Breach of Contract Judgment is final and non-appealable,[10] precludes Hancock from relitigating the issue of whether Remnant 3 is burdened by an easement in favor of the Grinpases, Lot 77J, and/or Unit 2X. The Trustee's Deed could not have been altered to eliminate reference to an easement that did not exist, nor could knowledge of an easement be imputed to KPL if the easement never existed.

Finally, in <u>Grinpas I</u> we noted that the preliminary title report for Remnant 3 obtained by KPL did not include any reference to an easement, and stated:

> There is nothing in the record evidencing that an "easement document" as contemplated in Hancock's July 24, 2002 letter [to KPL] was created or executed.
>
> . . . The Trustee's Deed did not contain any provision concerning the Grinpases' alleged easement.

<u>Grinpas I</u>, at *2. The law of the case is that the Trustee's Deed "accurately reflects that there was no express easement over Remnant 3 at that time." <u>Grinpas I</u>, at *6. The issues remanded were:

> whether KPL intended to create easements via the Consent and Joinder. Moreover, <u>if easements were created</u> by the Consent and Joinder, there are genuine issues of material fact as to the intent and meaning of the Second Amended Declaration, and further, no evidence that the Grinpases agreed to termination of any easements.

<u>Grinpas I</u>, at *7. The issues we remanded were material only because KPL's intention to create an easement by signing the Consent and Joinder would be the only way that an easement burdening Remnant 3 could exist. The Circuit Court did not err in denying Hancock's MSJ.

**B.   KPL's Cross-Appeal**

KPL raises four points of error. KPL's second and third points of error do not comply with HRAP Rule 28(b)(4)(C)

---

[10]   Hancock contends that he did not realize the Trustee's Deed had been altered until some time after he retained counsel in December 2012, but neither Hancock nor Trustee moved for relief from the Breach of Contract Judgment under HRCP Rule 59 (eff. 2000) (new trials; amendment of judgments) or HRCP Rule 60 (eff. 2006) (relief from judgment).

because they do not specify which of the Findings & Conclusions KPL contends are erroneous.

### 1.    Election of remedies

KPL first contends that the Circuit Court erred in denying KPL's January 28, 2013 motion for summary judgment against the Grinpases.  The motion argued that the Grinpases elected their remedy by obtaining the Breach of Contract Judgment against Hancock and K382.  Since the Breach of Contract Judgment was predicated on the Grinpases not having an easement over Remnant 3, KPL argues that the Grinpases should not have been allowed to obtain further relief based on their having such an easement.  As the Grinpases correctly point out, the ruling on KPL's election of remedies motion is moot because no party has appealed from the Circuit Court's finding that KPL did not intend to create easements via the Consent and Joinder.

### 2.    KPL's counterclaim against the Grinpases

KPL's second point of error contends that the Circuit Court "erred in ruling that the Grinpases did not tortiously interfere with KPL's property rights or conspire to commit such tortious interference . . . with Hancock/K382[.]"  It appears that KPL is challenging the following conclusions of law made by the Circuit Court:

> 10.    The Court finds that Grinpas did not engage in tortious conduct in their attempts to secure an easement over Remnant 3.
>
> . . . .
>
> 12.    The Court finds that Grinpas did not conspire to wrongfully interfere with KPL's use and enjoyment of Remnant 3.

A trial court's label of a finding of fact or a conclusion of law is not determinative of the standard of review.  Crosby v. State Dep't of Budget & Fin., 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994).  The Circuit Court's conclusions 10 and 12 present mixed questions of fact and law.  When a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the trial court's conclusions are

dependent on the facts and circumstances of each individual case. Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). A mixed finding of fact and conclusion of law is clearly erroneous when the record lacks substantial evidence to support it or when, despite some evidence to support it, we are left with the definite and firm conviction in reviewing all of the evidence that a mistake has been committed. Id. "[S]ubstantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." In re Grievance Arbitration Between State of Haw. Org. of Police Officers, 135 Hawai'i 456, 462, 353 P.3d 998, 1004 (2015) (citations omitted).

### a. Tortious interference with property rights

KPL does not cite, nor have we found, any reported Hawai'i appellate decision recognizing a cause of action for "tortious interference with property rights."[11] In describing its cross-claim against Hancock and K382, KPL's opening brief explains: "KPL's claims of 'wrongful interference with Remnant 3' sound in trespass." KPL cites to the Restatement (Second) of Torts § 158 (Am. Law Inst. 1965), which states:

> **§ 158 Liability for Intentional Intrusions on Land**
>
> One is subject to liability to another for trespass, irrespective of whether he [or she] thereby causes harm to any legally protected interest of the other, if he [or she] intentionally
>
> > (a)   enters land in the possession of the other, or causes a thing or a third person to do so, or
> >
> > (b)   remains on the land, or
> >
> > (c)   fails to remove from the land a thing which he [or she] is under a duty to remove.

Comment b. to § 158 states, in relevant part:

> Unless the context otherwise indicates, the phrase "enters land" is for convenience used throughout the Restatement of this Subject to include, not only coming upon land, but also

---

[11]   Cf. Weinberg v. Mauch, 78 Hawai'i 40, 50, 890 P.2d 277, 287 (1995) (tortious interference with contractual relations); Minton v. Quintal, 131 Hawai'i 167, 191, 317 P.3d 1, 25 (2013) (tortious interference with prospective business advantage).

> remaining on it, and, in addition, to include the presence upon the land of a third person or thing which the actor has caused to be or to remain there.

KPL's opening brief contains nothing to disclaim that KPL's tortious interference counterclaim against the Grinpases also sounds in trespass. Even if the Hawai'i Supreme Court were to adopt the Restatement's definition of "trespass," KPL cites no evidence in the record showing that either of the Grinpases entered, remained, or caused any other person or thing to be present on Remnant 3, other than pursuant to the License Agreement. The Findings & Conclusions state that "[t]he Court finds that Grinpas did not breach the license agreement or engage in conduct warranting rescission of the license agreement."[12] There is no evidence that the Grinpases "trespassed" on Remnant 3 at any time while Remnant 3 was owned by KPL.

Moreover, the Restatement (Second) of Torts contains the following scope note to the chapter that includes § 158:

> [T]hese Chapters deal only with the interest of the possessor in holding his [or her] land free from <u>physical intrusions</u> by others. They do not deal with the invasion of other interests of the possessor of land, such as his [or her] interest in its enjoyment free from annoyances other than physical intrusions, or his [or her] <u>interest in its vendibility</u>.

Restatement (Second) of Torts One 7 1 Scope Note (underscoring added). As we have noted, KPL points to no evidence before the Circuit Court that the Grinpases physically intruded upon Remnant 3 other than as permitted by the License Agreement.[13] As to KPL's interest in Remnant 3's vendibility, KPL's counterclaim did not plead a cause of action for slander of title.[14] Nor has KPL

---

[12]     KPL has not appealed from this finding.

[13]     KPL's reply brief admits that its claims against the Grinpases "are not based on the Grinpases' limited use of a small portion of Remnant 3 under the terms of their license agreement with Hancock/[K382]." (Emphasis omitted.)

[14]     To establish a claim for slander of title the plaintiff must prove:

> (1) ownership of or interest in the property by the plaintiff; (2) falsity of the words published; (3) malice of the defendant in publishing the false statements;

(continued...)

13

cited to any evidence before the Circuit Court necessary to prove a prima facie claim for slander of title, such as the existence of a purchaser who canceled a sales contract (which would also have supported a claim for tortious interference with contractual relations)[15] or of a prospective purchaser who declined to sign a sales contract (which would also have supported a claim for tortious interference with prospective business advantage).[16] Conclusion of law no. 10 is not clearly erroneous and was a correct application of the law.

### b.    Civil conspiracy

KPL contends that the Grinpases conspired with Hancock and K382 "[b]y attempting to create easements encumbering Remnant 3 without KPL's assent or knowledge," and that the Circuit Court erred by ruling:

> The fact that Mr. Grinpas tries to secure an easement, I don't view that as Mr. Grinpas engaging in some tortious behavior. He's just trying to get something that he thought he had way back from the very beginning. And so I don't find that it was tortious behavior on the part of Mr. Grinpas and when I say Mr. Grinpas, Mr. and Mrs. Grinpas.

The Hawai'i Supreme Court has defined civil conspiracy as the "combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999) (citations and brackets omitted), superseded by statute on other grounds as stated in Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, 113 Hawai'i 77, 107, 148 P.3d 1179, 1209

---

[14]    (...continued)
(4) publication to some person other than the owner;
(5) publication in disparagement of plaintiff's property or the title to it; and (6) special damages proximately resulting from such publication.

Isobe v. Sakatani, 127 Hawai'i 368, 377-78, 279 P.3d 33, 42-43 (App. 2012) (citations omitted).

[15]    See supra note 11.

[16]    See supra note 11.

(2006).  The supreme court explained that "[c]ivil conspiracy does not alone constitute a claim for relief."  Robert's Haw., at 260 n.44, 982 P.2d at 889 n.44 (citations omitted).  "In other words, concerted action is not enough[;] [a] civil conspiracy claim must include either that the alleged conspirators had a criminal or unlawful purpose for their concerted action or that the alleged conspirators used criminal or unlawful means to accomplish a lawful objective."  Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai'i 461, 482, 228 P.3d 341, 362 (App. 2010) (emphasis omitted).

It is not criminal or unlawful to establish or acquire an easement; KPL's claim must be that the Grinpases, Hancock, and K382 conspired to create an easement by criminal or unlawful means.  KPL argues that the Grinpases conspired with Hancock and K382 by entering into the Settlement Agreement, which required (among other things) that Hancock and K382 provide the Grinpases with an easement through Remnant 3.  This was not a "criminal or unlawful purpose" because Hancock and K382 could have performed by purchasing an easement from KPL with the Grinpases as either intended or incidental third-party beneficiaries of the easement purchase agreement.  Hancock's and K382's purchasing an easement from KPL would not be a "criminal or unlawful means" for them to obtain an easement for the Grinpases.  Although the Circuit Court focused on the Grinpases' intent, its conclusion of law no. 12 "that [the] Grinpas[es] did not conspire to wrongfully interfere with KPL's use and enjoyment of Remnant 3" was correct.  See, e.g., Poe v. Hawaii Labor Relations Bd., 87 Hawai'i 191, 197, 953 P.2d 569, 575 (1998) (if upon review the circuit court's decision is correct, the decision "will not be disturbed on the ground that it gave the wrong reason for its ruling"); Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawai'i 452, 459, 903 P.2d 1273, 1280 (1995) (appellate court may affirm judgment of lower court on any ground in the record that supports affirmance); State v. Taniguchi, 72 Haw. 235, 239, 815 P.2d 24, 26 (1991) ("[W]e have consistently held that where the decision below is correct it must be affirmed by the appellate court even though the lower tribunal gave the wrong reason for its action."); Strouss v.

15

Simmons, 66 Haw. 32, 40, 657 P.2d 1004, 1010 (1982) ("An appellate court may affirm a judgment of the lower court on any ground in the record which supports affirmance."). Conclusion of law no. 12 is not clearly erroneous and was a correct application of the law.

### 3. **KPL's cross-claim against Hancock and K382**

KPL's third point of error contends that the Circuit Court erred "in ruling that Hancock/K382 did not tortiously interfere with KPL's property rights, conspire to commit such tortious interference, or commit negligent or fraudulent misrepresentation." It appears that KPL is challenging the following conclusions of law made by the Circuit Court:

> 16. The Court finds that Hancock and K382 did not engage in negligent or knowing misrepresentations or failure to disclose material facts regarding the 1999 license agreement, the 2003 settlement agreement, or the K382 CPR documents.
>
> . . . .
>
> 18. The Court finds that Hancock and K382 did not wrongfully interfere with KPL's use and enjoyment of Remnant 3 by attempting [to] create easements encumbering Remnant 3 without KPL's consent.
>
> . . . .
>
> 20. The Court finds that Hancock and K382 did not fraudulently induce KPL to execute a 2005 amendment to the K382 CPR Declaration and quitclaim deeds.
>
> . . . .
>
> 22. The Court finds that Hancock and Kapaa 382 did not conspire to wrongfully interfere with KPL's use and enjoyment of Remnant 3.
>
> . . . .
>
> 35. The Court finds that Hancock did not fraudulently induce KPL to execute a 2005 amendment to the K382 CPR Declaration and quitclaim deeds.
>
> . . . .
>
> 37. The Court finds that Hancock did not conspire to wrongfully interfere with KPL's use and enjoyment of Remnant 3.

### a.   Tortious interference with property rights

As we noted above, KPL's claims for "'wrongful interference with Remnant 3' sound in trespass.". Even if the Hawaiʻi Supreme Court were to adopt the Restatement (Second) of Torts § 158 definition of "trespass," attempting to create an easement encumbering real property is not a trespass. KPL cites no evidence in the record showing that Hancock or K382 trespassed on Remnant 3, as the term is used in Restatement § 158, at any time while Remnant 3 was owned by KPL.

KPL argues that it presented evidence showing that as a result of Hancock's and K382's attempts to encumber Remnant 3 with an easement and the Grinpases' efforts to impose their claimed easement through this lawsuit, KPL has not been able to CPR its property and sell up to two units as intended, and that this has resulted in diminution in market value and lost profits. As discussed above, KPL's cross-claim did not plead a cause of action for slander of title, nor has KPL cited to any evidence necessary to prove the "special damages" element of a prima facie claim for slander of title, Isobe, 127 Hawaiʻi at 378, 279 P.3d at 43, such as the existence of an actual purchaser who canceled a sales contract (which would also have supported a claim for tortious interference with contractual relations) or of a prospective purchaser who actually declined to sign a sales contract (which would also have supported a claim for tortious interference with prospective business advantage). Conclusion of law no. 18 is not clearly erroneous and was a correct application of the law.

### b.   Civil conspiracy

As we noted above, Hancock and K382 did not conspire with the Grinpases to wrongfully interfere with KPL's use and enjoyment of Remnant 3. Conclusion of law no. 22 is not clearly erroneous and was a correct application of the law.

### c.   Misrepresentation

"Negligent misrepresentation has the following elements: (1) false information be supplied as a result of the

failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." Santiago v. Tanaka, 137 Hawai'i 137, 153-54, 366 P.3d 612, 628-29 (2016) (citations and internal quotation marks omitted).[17]

KPL argues that Hancock and K382 represented that the Consent and Joinder KPL signed on December 21, 2004, "was the mechanism by which KPL would obtain CPR lots on Remnant 3." To the extent KPL's claim is based upon Hancock's and K382's failure to actually obtain a CPR of Remnant 3 for KPL:

> [F]raud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise.

Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000) (alteration in original) (citation and emphasis omitted).

To the extent KPL's claim is based upon Hancock and K382 fraudulently inducing KPL to sign the Consent and Joinder in order to secretly create an easement for the Grinpases over Remnant 3, any harm to KPL was remedied on July 20, 2005, when the Second Amended Declaration (executed by KPL as "Remnant 3 Owner") was recorded in the Bureau of Conveyances. The Second Amended Declaration removed Remnant 3 from the Kulana Condominium, Grinpas I, at *3-4, and effectively rescinded the Consent and Joinder. See Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 289, 172 P.3d 1021, 1033 (2007) ("[W]e believe a defrauded party should be afforded the choice of remedies, i.e., rescission or an independent action for damages.") (italics omitted).

Finally, to the extent Hancock and K382 fraudulently induced KPL to sign the Consent and Joinder in order to secretly

---

[17] KPL's opening brief does not address the issue of intentional misrepresentation, which waives the issue on appeal. See Dement v. Atkins & Ash, 2 Haw. App. 324, 327, 631 P.2d 606, 609 (1981).

create an easement for the Grinpases over Remnant 3, KPL sustained no actual loss. The Circuit Court correctly stated that the issue on remand was "whether KPL intended to create and grant Grinpas' [sic] claimed easement when it entered into a consent and joinder in 2004." See Grinpas I, at *8 ("The point of contention in this case is whether by[ ]executing the Consent and Joinder, KPL intended to create the easements reflected in the 26A/26E Map."). The Circuit Court made the following findings of fact, none of which are challenged by KPL:

> 25. KPL did not intend, agree or consent to being included in the K382 CPR.
>
> 26. Rather, KPL intended to have its own separate condominium property regime for Remnant 3.
>
> . . . .
>
> 27. Hancock promised KPL that he would create and pay for a separate CPR for Remnant 3.
>
> 28. KPL executed a Consent and Joinder with the intent of creating a CPR project separate and apart from the K382 CPR development. The Court believes KPL hoped to market its development before K382 and Hancock could market the K382 CPR.
>
> 29. In November 2004, Dustin Crane [the managing member of KPL] was provided with a Consent and Joinder.
>
> . . . .
>
> 31. Dustin Crane understood that the Consent and Joinder related to Remnant 3's CPR.
>
> 32. Dustin Crane signed the Consent and Joinder with the intent that KPL would be obtaining its own CPR separate and apart from the K382 CPR.
>
> 33. KPL did not intend by the Consent and Joinder to submit Remnant 3 to the K382 CPR.
>
> 34. KPL did not intend through the Consent and Joinder to create or grant easements over Remnant 3 . . . benefitting Grinpas or Grinpas' [sic] Property.

KPL's Remnant 3 is not burdened by an easement and is not subject to the K382 CPR. Conclusions of law nos. 16, 20, 35, and 37 are not clearly erroneous and were a correct application of the law.

### 4.   Uyemura v. Wick

KPL's final point of error contends that the Circuit Court "erred in denying KPL's request for attorney [sic] fees under Uyemura v. Wick."  The request was made in one sentence in KPL's closing brief, filed with the Circuit Court on June 3, 2013:

> In addition, Hancock's misrepresentations regarding the Kulana CPR documents and failure to disclose to KPL the Settlement Agreement and easements AU-26A and AU-26E entitles KPL to a grant of attorneys' fees against Hancock under Uyemura v. Wick, 57 Haw. 102, 109, 551 P.2d 171, 176 (1976).

The Circuit Court's order denying KPL's request for attorneys' fees was entered on August 15, 2013.

Uyemura involved the sale of a lot in a subdivision. Wick Realty was the sales agent for the developer.  One of Wick Realty's brokers agreed to sell the lot to Uyemura and received Uyemura's $100 initial deposit,[18] not realizing that another Wick Realty broker had put a "hold" on the same lot for the Chungs. The Chungs decided to buy the lot and paid a $500 deposit.  Wick Realty decided to honor the hold, informed Uyemura that it had sold the lot to the Chungs, and returned Uyemura's deposit. Uyemura paid an additional deposit due under her sales contract. Wick Realty returned the additional deposit to Uyemura with another explanation that the lot had been sold to the Chungs. Uyemura sued Wick Realty and the developer for specific performance.  In the meantime, the sale to the Chungs closed. When Uyemura found out the lot had been sold, she joined the Chungs as defendants.  The Chungs filed a cross-claim against Wick Realty.  The trial court denied Uyemura's request for specific performance on the ground that the Chungs were bona fide purchasers, but awarded Uyemura money damages.  The trial court also awarded the Chungs $500 as attorneys' fees and costs.  Wick Realty appealed.  The supreme court affirmed the award of

---

[18]     The transactions at issue happened in 1972.

attorneys' fees and costs. After stating that attorneys' fees ordinarily cannot be awarded unless authorized by statute, stipulation, or agreement, the supreme court noted:

> However, it is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others, or placed [the plaintiff] in such relation with others as makes it necessary to incur expenses to protect his [or her] interest, such expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages.

Uyemura, 57 Haw. at 108-09, 551 P.2d at 176. Quoting 1 S. Speiser, Attorneys' Fees, § 13:4 (1973), the court held:

> In order to recover attorneys' fees under this principal, the plaintiff must establish:
>
> (1) *that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement;*
>
> (2) that the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered;
>
> (3) that the attorneys' fees were incurred in that third-party litigation; and
>
> (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort, that they are the natural and necessary consequences of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery[.]

Id. at 109, 551 P.2d at 176 (reformatted and emphasis added).

In this case, we have affirmed the Circuit Court's conclusion of law no. 16 that "Hancock and K382 did not engage in negligent or knowing misrepresentations or failure to disclose material facts regarding the . . . 2003 settlement agreement, [19] or the K382 CPR documents [purported to include Remnant 3 in the CPR and which showed easements AU-26A and AU-26E encumbering

---

[19] In support of its Uyemura claim, KPL argues that Hancock's failure to disclose the existence of the Settlement Agreement to KPL caused KPL to be sued by the Grinpases. There was nothing to disclose when KPL purchased Remnant 3 because the Settlement Agreement was not executed until September 2003, more than a year after KPL purchased Remnant 3.

Remnant 3].[20]" (Footnotes added.) Having failed to prove a breach of contract or tortious conduct by Hancock or K382, KPL is not entitled to recover the attorneys' fees it incurred to litigate against the Grinpases from Hancock or K382 under Uyemura.

In addition, the record reflects that the Grinpases did not sue KPL because Hancock or K382 breached a contract with KPL or a tort duty owed to KPL. The Grinpases' complaint made the following allegations against KPL:

> 41. In late 2006 through the early months of 2007, [the Grinpases] had several communications with Dustin Crane who communicated on behalf of [KPL]. In all of these communications Mr. Crane did clearly express that [KPL] did agree to execute the access and utilities easement in favor of Unit 3.

> 42. On March 6, 2007, Dustin Crane did call Plaintiff Robert Grinpas and did advise that he and the other partners of [KPL] were on [Kauaʻi] and requested a meeting that same day in order to resolve some matters concerning the easement.

> 43. Plaintiff, ROBERT GRINPAS did meet with all of the partners of [KPL] on March 6, 2007. At that meeting, for the first time [KPL] questioned whether or not they were obligated to convey the access and utilities easement through Remnant 3, to [the Grinpases]. At that meeting the partners of [KPL] said that they had an offer which presented a "win - win situation", and they offered to grant the access and utilities easement only on the condition that [the Grinpases] grant reciprocal easements to [KPL] through Unit 2X, and otherwise grant rights to [KPL], which [the Grinpases] were otherwise not obligated to do, and to which [KPL] was not otherwise entitled.

> . . . .

> 46. [KPL] continue[s] to refuse to convey the access and utilities easement through [R]emnant 3 to [the Grinpases], unless [the Grinpases] convey interests in Kulana Unit 2X to [KPL], as aforesaid.

---

[20] In support of its Uyemura claim, KPL argues that it was sued by the Grinpases because of "Hancock's misrepresentations regarding the Kulana CPR documents[.]" KPL acquired Remnant 3 in July 2002. The Trustee's Deed was recorded in the Bureau of Conveyances on August 28, 2002. The CPR Declaration for the Kulana Condominium was recorded in the Bureau of Conveyances more than two years later, on December 14, 2004. Even if KPL had been misled into signing the Consent and Joinder in 2004, the Second Amended Declaration — which removed Remnant 3 from the Kulana Condominium CPR — was recorded in the Bureau of Conveyances on July 20, 2005, more than two years before the Grinpases sued KPL.

The Grinpases sued KPL because:

> 52.    On or about March 6, 2007, [KPL] perceived that [it] had an opportunity to take advantage of the situation and realize additional advantages at [the Grinpases'] expense, to which [KPL] knew that [it was] not lawfully entitled.

In other words, the Grinpases sued KPL because KPL would not convey an easement over Remnant 3 on terms acceptable to the Grinpases.

Finally, KPL argues that "Hancock/K382's misconduct and breach of the [S]ettlement [A]greement naturally resulted in KPL's expenditure of significant costs and fees in defending itself in this lawsuit initiated by the Grinpases." Even if Hancock and K382 had breached tort or contract duties they owed to the Grinpases, and the Grinpases had sued KPL as a result, KPL would not be able to recover its attorneys' fees from KPL under Uyemura; Uyemura only applies when the party from whom the fees are sought (in this case, Hancock/K382) breached a tort or contract duty <u>owed to the party seeking recovery</u> (in this case, KPL).

In Uyemura the supreme court construed the record to reflect that Wick Realty fraudulently concealed from the Chungs that litigation by Uyemura concerning the lot was imminent or pending. On that basis the court concluded that the Chungs were entitled to recover the attorneys' fees and costs incurred to defend against Uyemura's lawsuit as damages from Wick Realty. Id. at 110, 551 P.2d at 176. In Uyemura, the Chungs were able to recover attorneys' fees as damages from Wick Realty because Wick Realty breached a duty <u>owed to the Chungs</u>, which caused the Chungs to become involved in litigation against Uyemura. Had Wick Realty disclosed to the Chungs that litigation with Uyemura over the lot was imminent or pending, the Chungs may have chosen not to close their transaction, which would have obviated the need for Uyemura to join them as defendants in her lawsuit against Wick Realty.

The two reported Hawai'i appellate decisions[21] that have discussed Uyemura also stand for the proposition that the party claiming attorneys' fees as damages must show that the party from whom the fees are sought breached a duty owed to the claimant, which resulted in the claimant having to litigate against a third party. In Occidental Underwriters of Haw., Ltd. v. American Sec. Bank, 5 Haw. App. 431, 696 P.2d 852 (1985), Occidental insured real property owned by PJV, subject to a mortgage in favor of American Security Bank (**Bank**). Occidental sued PJV and the Bank for premiums due. PJV cross-claimed against the Bank, claiming that the Bank caused Occidental to insure the property and was liable to PJV under Uyemura for PJV being sued by Occidental. Occidental and the Bank settled the premium payment dispute. PJV moved for summary judgment on its cross-claim against the Bank and the Bank moved for summary judgment on PJV's cross-claim. The trial court denied PJV's motion and granted the Bank's motion. PJV appealed. We held that the trial court correctly denied PJV's motion, but we reversed the summary judgment in favor of the Bank. We held that "there is a genuine issue of material fact whether [the Bank]'s failure to pay the insurance premium owed to [Occidental] was a wrongful or negligent act or breach of agreement vis-a-vis PJV[.]" Occidental, 5 Haw. App. at 434, 696 P.2d at 854 (emphasis added). This would be the case if, for example, the terms of the loan or mortgage required that the Bank pay the property insurance premiums from an escrow account funded from PJV's loan payments.

In Lee v. Aiu, 85 Hawai'i 19, 936 P.2d 655 (1997), Lee and Aiu owned a house as joint tenants. Disputes arose between them over ownership of the house. They agreed to sell it, with $25,000 of the proceeds going to Aiu and Lee retaining the

---

[21] A third case, Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Hawai'i 37, 951 P.2d 487 (1998), discussed an award of attorneys' fees in connection with an appeal. After holding that an award of costs and fees to a prevailing party is essentially an award of damages that may involve certain factual determinations, the supreme court held that "appellate courts have jurisdiction to make factual determinations in the limited context of taxing attorneys' fees and costs incurred on appeal." Id. at 52, 951 P.2d at 502 (emphasis omitted). Although the Fought opinion discussed Uyemura, the attorneys' fee awards were made pursuant to HRS § 607-14 (1997) ("Attorneys' fees in actions in the nature of assumpsit, etc."), not as common law damages under Uyemura.

balance (**Settlement Agreement**). Aiu retained Dixon, who was a licensed attorney and also a realtor. Dixon and his wife (**Pearson-Dixon**), also a realtor, convinced Aiu to sell his interest in the house to them for $25,000 — even though Dixon originally advised Aiu that Aiu's equity in the house was probably worth $50-55,000 and that $25,000 was a "ridiculous" sum of money for his interest. Aiu moved to the mainland without telling Lee what he had done. Lee learned about it when Pearson-Dixon wrote Lee a letter declaring the Dixons's ownership of a one-half undivided interest in the house, advising Lee that because the Dixons had not assumed the mortgage, Lee must continue to pay the mortgage or risk foreclosure, cautioning Lee not to commit waste, and suggesting that Lee consider a lower selling price for the house in order to achieve a faster sale. Lee then sued Aiu and the Dixons claiming, among other things, specific performance of the Settlement Agreement by Aiu and tortious interference with contractual relations (**TICR**) by the Dixons.

The case was tried to a jury. The trial court did not allow Lee to introduce evidence of her attorneys' fees incurred in litigating with Aiu as an element of damages in her TICR claim against the Dixons. The jury found that: (1) when the house was purchased, Lee and Aiu agreed that Lee would be the sole owner and that Aiu would be on the title in name only; (2) there was a binding and enforceable agreement wherein Aiu agreed to sell his rights and interests in the house to Lee for $25,000; (3) Aiu breached that agreement; (4) Lee suffered damages as a result of the breach; and (5) such damages amounted to $15,000. The trial court set aside the jury's findings and awarded damages to Lee in an amount less than what the jury awarded. The Dixons appealed and Lee cross-appealed.

After discussing the evidence presented at trial, the supreme court reinstated the jury's findings and remanded with instructions to enter an order equitably reforming the deed to reflect Lee as the sole owner of the house. Id. at 31, 936 P.2d at 667. The supreme court affirmed the trial court's denial of Lee's request for an award of attorneys' fees under HRS § 607-14,

25

holding that a suit to enforce an agreement is an action for specific performance of a contract, not an action in the nature of assumpsit. Id. at 31-32, 936 P.2d at 667-68. Of relevance to the case now before us is the supreme court's ruling that the trial court erred in not allowing Lee to introduce evidence of the attorneys' fees she incurred in litigating with Aiu as an element of damages in her tort claim against the Dixons. After discussing Uyemura, the supreme court held:

> Lee became involved in a legal dispute with Aiu because of the Dixons' tortious interference with the contractual relation between Lee and Aiu. As a natural and necessary consequence of the Dixons' tortious interference, Lee was required to litigate with Aiu, which in turn caused her to incur attorney's [sic] fees. Although some jurisdictions have held that this exception to the American Rule does not apply where the plaintiff consolidates his or her actions against both the contract breacher (in this case, Aiu) and the tortfeasor (in this case, the Dixons), we are in accord with those jurisdictions that hold that it is of no consequence whether the actions are brought together or separately. . . . [W]e see no reason why attorneys' fees should be recoverable when the aggrieved party files separate lawsuits against the contract breacher and the tortfeasor, but should be denied when he [or she] consolidates both into one law suit.

Id. at 33, 936 P.2d at 669 (emphasis added) (citation and internal quotation marks omitted). The parties from whom fees were sought (the Dixons) breached a tort duty owed to the party seeking fees (Lee), who became involved in litigation against a third-party (Aiu) as a result. The supreme court remanded the case for a new trial on the issue of damages, with instructions that Lee be allowed to introduce evidence of the attorneys' fees she incurred in litigation with Aiu that were caused by the Dixons's tortious interference with the Settlement Agreement. In this case, the Grinpases sued KPL for an easement because Hancock and K382 breached their duty — owed to the Grinpases, not to KPL — to procure an easement over KPL's property. The Circuit Court correctly denied attorneys' fees to KPL under Uyemura v. Wick.

## III.

For the foregoing reasons, the Second Amended Final Judgment is affirmed.

DATED:  Honolulu, Hawai'i, August 7, 2019.

On the briefs:

Robert Grinpas,
Esther Grinpas,
Plaintiffs-Appellees/Cross-
Appellees, Self-Represented.

Jade Lynne Ching,
John Rhee,
for Defendant/Third-Party
Plaintiff-Appellee/Cross-
Appellant, Kulana Partners,
LLC.

Timothy J. Hogan,
for Defendant-Appellant/Cross-
Appellee, William R. Hancock.

Presiding Judge

Associate Judge

Associate Judge